**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| WILLIAM E. COBB, JR. <br><br> PLAINTIFF, <br> v. <br><br> NATIONAL HEALTH INSURANCE COMPANY, <br> DEFENDANT. | Civil Action No.   4:20-cv-198 <br><br> COMPLAINT <br><br> JURY TRIAL REQUESTED |

**Introduction**

1.      Plaintiff William E. Cobb, Jr. ("Mr. Cobb") asserts state law claims seeking all available damages and relief arising from and relating to Defendant National Health Insurance Company's sale and administration of a group short-term medical insurance policy.

2.      The headings contained in this complaint are intended only to assist in reviewing the statements and allegations contained herein.  To avoid the unnecessary repetition in each section, Plaintiff hereby affirms and incorporates each paragraph in each section of this complaint as though fully set forth therein.

3.      The factual allegations contained in this complaint are not intended to be exhaustive and are presented throughout this complaint so as to provide the requisite notice of Plaintiff's claims.

**Jurisdiction & Venue**

4.      Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction.

5.      The parties are diverse.  Mr. Cobb resides in and is a citizen of the State of Indiana.  National Health Insurance Company is incorporated in the State of Texas, where it also maintains its principal place of business.

6.      The amount in controversy exceeds $75,000.  The approximate value of the unpaid group short-term medical insurance policy benefits is at least $111,756.  Mr. Cobb also seeks additional relief including, *inter alia*, compensatory, equitable, and pecuniary damages as well as attorneys' fees and costs.

## Parties

7.      At all relevant times, Mr. Cobb was insured under a group short-term medical insurance policy marketed, insured, and administered by the Defendant.

8.      Defendant National Health Insurance Company ("NHIC") is the insurer for the group short-term medical insurance policy at issue in this lawsuit.  At all relevant times, NHIC was operating as an insurance company throughout the state of Indiana under NAIC ID 82538.

## General Factual Allegations

9.      On January 1, 2020, Mr. Cobb applied for coverage under the group short-term medical insurance policy ("Policy") issued by NHIC.

10.      Mr. Cobb's application for Policy coverage, completed by NHIC's agent, was true, accurate, and complete.

11.      Prior to his application, Mr. Cobb had been covered by another health insurance policy for the prior 12 months—all of 2019.

12.      NHIC approved Mr. Cobb for coverage under the Policy effective January 2, 2020.

13.      Mr. Cobb paid all premiums necessary to maintain the Policy coverage from January 2, 2020 through at least September 1, 2020.

14.      On April 10, 2020, Mr. Cobb was provided medical treatment at Norton Brownsboro Hospital ("Norton").  Mr. Cobb received additional medical treatment from Norton on April 11, 2020, April 12, 2020, and June 18, 2020.

15.     Norton billed Mr. Cobb $106,385.15 for medically necessary services which were covered under the Policy.

16.     On April 20, 2020, Mr. Cobb received medical treatment from Dr. Vipul R. Panchal ("Dr. Panchal").  Dr. Panchal billed Mr. Cobb $3,105.00 for medically necessary services which were covered under the Policy.

17.     On June 18, 2020, Mr. Cobb received medical treatment from Dr. Benjamin M. Callahan ("Dr. Callahan").  Dr. Callahan billed Mr. Cobb $830.00 for medically necessary services which were covered under the Policy.

18.     On June 12, 2020, Mr. Cobb received medical treatment from Dr. VW. Alan Currie ("Dr. Currie").  Dr. Currie billed Mr. Cobb $1,436.18 for medically necessary services which were covered under the Policy.

19.     Norton, Dr. Panchal, Dr. Callahan, and Dr. Currie were participating providers under the Policy, specifically the Aetna Open Choice PPO.

20.     The billings from Norton, Dr. Panchal, Dr. Callahan, and Dr. Currie were timely submitted to NHIC for claims payment under the Policy.

21.     Mr. Cobb complied with the applicable Policy terms necessary for NHIC to pay the billing claims from Norton, Dr. Panchal, Dr. Callahan, and Dr. Currie.

22.     Norton's billing claims were submitted in April and June 2020 respectively.  Dr. Panchal's billing claims were submitted in April 2020.  Drs. Callahan's and Currie's billing claims were submitted in June 2020.

23.     Pursuant to the Policy terms, NHIC was required to approve or deny the billing claims within 30 days of receipt.  NHIC did not approve or deny the April claims within the contractual 30 days of receipt.

24.     Instead, by letter dated July 9, 2020, through its marketing agent, NHIC notified Mr. Cobb all of the billing claims had been denied, stating that:

> Based on information we recently received about your health history, it's important that you know we intend to rescind your Short Term Medical with Preferred Provide Medical Benefits coverage as of January 2, 2020 and January 1, 2021.  The health information we received would have made you an eligible for these policies at the time you applied.

25.     NHIC claimed that Mr. Cobb had incorrectly answered the application question concerning any medical or surgical treatment that he had within the past five years for coronary artery disease.

> The following question on such application asks:
>
> Within the last 5 years, has any applicant received medical or surgical treatment, consulted a health care professional, or has medication been prescribed or recommended for the following: ...
>
> b. Coronary Artery Disease (CAD),
>
> … This question was answered "No". However, according to medical records from OneMed/Dr. William A. Currie, the question above should have been marked "Yes" due to your documented medical history regarding Coronary Artery Disease (CAD).

26.     NHIC did not state any other reason for denying coverage for Mr. Cobb's billing claims.

27.     Despite the Policy expressly providing 180 days to appeal a claim denial decision, NHIC only allowed 35 days for Mr. Cobb to challenge its decision to deny the billing claims and to rescind the Policy coverage.

28.     By letter dated July 19, 2020, Dr. Panchal refuted NHIC's conclusion that Mr. Cobb had been treated for coronary artery disease prior to 2020, stating as follows:

> I am writing on behalf of William Cobb and his recent receipt of a letter rescinding his insurance coverage. I would believe

the information that you have is an error.

He replied "No" to coronary heart disease prior to January 1 2020.

This is factually correct.

Mr. Cobb was seen by me in 2019 for **asymptomatic coronary artery calcification,** which is different and not coronary artery disease. He had a calcium score that was elevated in September 2018, suggesting early coronary atherosclerosis but no active coronary disease, prior heart attack, or heart procedures in the past. In January 2019, he had a stress test that was completely normal. As such, we focused on aggressive primary prevention strategies to prevent future events.

Unfortunately, he developed cardiac symptoms for the first time in April 2020, when he was seen in the hospital for new onset angina pectoris.

April 2020 was when he had his first coronary event and the diagnosis of coronary artery disease. Ultimately, work-up revealed acute coronary disease with a 95% ulcerated plaque as the culprit lesion that was new. He underwent intracoronary stenting of the culprit vessel.

As such, I believe that Mr. Cobb portrayed his health history accurately, and should accordingly have his policy reinstated.

29.     By letter dated July 22, 2020, Dr. Currie also refuted NHIC's conclusion, stating

as follows:

Mr. William Cobb established care in my practice on December 21, 2018. At that time, he had completed a coronary artery calcium scoring CAT scan on 9/14/2018 for screening purposes. He did not have evidence of coronary artery disease at that time. After I reviewed that abnormal study at his initial visit on 12/21/2018, he was referred for a treadmill EKG stress test. That test was completed on 1/04/2019. It indicated no evidence of coronary ischemia or coronary artery disease. His exercise capacity was excellent. He previously had a nuclear stress test, ordered by Dr. J Havens, on 11/16/2015. It revealed no evidence of ischemia or coronary artery disease. A nuclear exercise stress test on 1/14/2019 also indicated no ischemia or evidence of coronary artery disease. Once again, his exercise capacity on the test was excellent. He had never complained of symptoms suggestive of

coronary artery disease.

He was referred to Dr. V. Panchal (Norton Healthcare Cardiologist) on 2/20/2019 for further assessment due to the abnormal coronary calcium score. Dr. Panchal felt that considering Mr. Cobb's excellent functional capacity noted on stress testing, along with no complaints suggestive of coronary artery disease, that no further testing was needed as he was deemed low risk for coronary artery disease. Dr. Panchal mentioned to me during a follow up telephone discussion about Mr. Cobb that the elevated calcium test could possibly be due to calcium deposition outside of the coronary arteries. I believe he also mentioned this to Mr. Cobb. Mr. Cobb does not ever recall being told he had coronary artery disease at that time by Dr. Panchal or me, at any time until he underwent cardiac catheterization in April of 2020.

Medical diagnosis terminology and diagnosis codes from our office following his initial evaluation by Dr. Panchal in 2019 suggested the possibility of coronary artery disease, however that diagnosis could not be definitively made unless Mr. Cobb underwent a cardiac catheterization. As stated previously, that was never indicated until 2020 as he had no symptoms or functional capacity limits to suggest further evaluation.

Mr. Cobb never indicated to me or Dr. Panchal until April of 2020 that he had any symptoms to suggest possible underlying coronary artery disease. He was admitted to Norton hospital on 4/10/2020 with chest pain that had developed within 1-2 weeks prior to admission. He was discharged to follow up with Dr. Panchal, who then admitted him electively for diagnostic catheterization and ultimately percutaneous intervention of his then noted significant coronary artery disease. Mr. Cobb was not able to have the cardiac catheterization procedure until your company approved it based on Dr. Panchal's recommendations.

In summary, Mr. William Cobb has significant coronary artery disease that required intervention in April 2020. Although he had an abnormal calcium scoring study in 2018, there was not enough clinical evidence until April 2020 to suggest definitive established coronary artery disease.

30.     By letter dated August 4, 2020, Mr. Cobb also addressed NHIC's decision to deny

his billings claims and to rescind his coverage, stating as follows:

I am writing in response to a letter that I receive dated July 9, 2020 in regards to the rescission of my insurance. You are questioning

> my response of "NO" to having or having been treated for
> Coronary Artery Disease (CAD).
>
> I answered "NO" to all of them because I had not been treated for
> any of those items listed in your letter. At the time that I completed
> my application I did **NOT** have any signs nor was I being treated
> for Coronary Artery Disease. I answered the question truthfully.

31.     Following receipt of Mr. Cobb's letter, as well as the letters from Drs. Panchal

and Currie, NHIC did not request any further information.  NHIC also did not obtain any other

medical opinion.

32.     Instead, by letter dated August 6, 2020, NHIC conceded that Mr. Cobb had not

received prior treatment for coronary artery disease and, as such, had answered the application

correctly.

33.     NHIC withdrew its denial decision and corresponding decision to rescission,

stating as follows:

> Your appeal was reviewed by the NGAH Grievance Panel on
> July 29, 2020. Pursuant to that review of the additional
> information you provided, the NGAH Grievance Panel
> determined that we will <u>not</u> be rescinding your coverage under
> the Short Term Medical with Preferred Provider Medical
> Benefits Certificates active from January 2, 2020 through
> December 31, 2020 and January 1, 2021 through December 30,
> 2021.

34.     Despite reversing its prior denial decision, NHIC did not promptly pay the billing

claims.

35.     Instead, NHIC issued a new denial decision that Mr. Cobb's medical conditions

were subject to the Policy pre-existing exclusion, stating as follows:

> Please note that based on our review of your medical records, the
> following conditions were found to be pre- existing:
>
> - Coronary artery disease involving native coronary artery of
>   native heart without angina pectoris.
> - Agatston coronary artery calcium score greater than 400.

- 7 -

- Coronary atherosclerosis
- endocrine disorder, unspecified;
- low back pain;
- elevated fasting blood sugar;
- coronary atherosclerosis due to calcified coronary lesion;
- hemorrhage of anus and rectum;
- non-thrombosed external hemorrhoids
- overweight;
- Gastroesophageal reflux disease (GERD)
- Low testosterone level

Therefore, any claims submitted resulting from such conditions will not be eligible for payment in accordance with the following definition and exclusion:

… This Certificate does not cover any of the following:

1.  Charges resulting directly or indirectly from a Pre-Existing Condition or a complication resulting therefrom.

36.    NHIC's August 6, 2020 new denial did not explain how Mr. Cobb's medical treatment, for which the billings claims were submitted, was specifically subject to the Policy pre-existing exclusion.  Rather, NHIC simply stated Mr. Cobb's billing claims would be "processed in accordance with" the Policy.

37.    NHIC did not process Mr. Cobb's billing claims any further.

38.    On August 20, 2020, NHIC again wrote to Mr. Cobb.  NHIC's letter did not provide any further decision on his billing claims.  Instead, NHIC informed Mr. Cobb that "Explanation of Benefit Statements will be sent when the claims have been adjudicated."

39.    Again, NHIC took no further action.  NHIC did not adjudicate Mr. Cobb's billing claims under the new denial rationale—pre-existing exclusion.  NHIC did not send any Explanation of Benefit Statements.

40.    NHIC also did not address Mr. Cobb's prior health insurance coverage.

41.     NHIC did not obtain any contrary medical opinions or request any further information from Mr. Cobb.

## Claims

### A.     Breach of Contract

42.     The Policy is a written contract between NHIC and Mr. Cobb.

43.     Mr. Cobb complied with all of his obligations under the Policy necessary to receive payment for his billing claims.

44.     NHIC breached the terms of the Policy by, inter alia, failing to promptly pay Mr. Cobb's billing claims.

45.     As a direct and proximate result of NHIC's actions, Mr. Cobb was and continues to be damaged.

46.     Mr. Cobb seeks compensatory, equitable, and punitive relief against NHIC in an amount to be determined by a jury at trial to include costs, interest, attorneys' fees, and all other available relief.

### B.     Breach of Duty of Good Faith and Fair Dealing

47.     NHIC owed, and continues to owe, Mr. Cobb a common law duty of good faith and fair dealing in the administration and processing of his billing claims under the Policy.

48.     NHIC breached its duties to Mr. Cobb including, *inter alia*:

a.     intentionally delaying processing of Mr. Cobb's billing claims without regard to the detrimental effect on him;

b.     knowingly denying Mr. Cobb's billing claims based on rescission without conducting any reasonable investigation;

c.     improperly raising new reasons for denying Mr. Cobb's billing claims, after its initial denial was found to be without foundation;

d.      failing to comply with the Policy terms and conditions requiring prompt

processing and claim resolution, including payment of Mr. Cobb's billing

claims; and

e.      failing to investigate whether Mr. Cobb's prior creditable coverage

prevented application of the Policy pre-existing exclusion.

49.     As a direct and proximate result of NHIC's actions, Mr. Cobb was and continues

to be damaged.

50.     Mr. Cobb seeks compensatory, equitable, and punitive relief against NHIC in an

amount to be determined by a jury at trial to include costs, interest, attorneys' fees, and all other

available relief.

### C.      Unfair Claims Settlement Practices

51.     As an Indiana insurer, NHIC is subject to Indiana's unfair claims settlement

practices statute—I.C. 27-4-1-4.5.

52.     NHIC violated its statutory obligation to Mr. Cobb including, *inter alia*:

a.      intentionally delaying processing of Mr. Cobb's billing claims without

regard to the detrimental effect on him;

b.      knowingly denying Mr. Cobb's billing claims based on rescission without

conducting any reasonable investigation;

c.      improperly raising new reasons for denying Mr. Cobb's billing claims,

after its initial denial was found to be without foundation;

d.      failing to comply with the Policy terms and conditions requiring prompt

processing and claim resolution, including payment of Mr. Cobb's billing

claims;

e.      failing to investigate whether Mr. Cobb's prior creditable coverage

prevented application of the Policy pre-existing exclusion.

f.      misrepresenting the pertinent facts and policy provisions relating to Mr. Cobb's billing claims and Policy coverage;

g.      failing to adopt and implement reasonable standards for the prompt investigation of Mr. Cobb's billing claims  under the Policy;

h.      compelling Mr. Cobb to retain counsel and to commence this lawsuit in order to recover payment for his Mr. Cobb's billing claims;

i.      not attempting in good faith to effectuate prompt, fair, and equitable settlement of Mr. Cobb's billing claims despite liability being reasonably clear;

j.      engaging in a predetermined agenda to deny Mr. Cobb's billing claims.

53.     As a direct and proximate result of NHIC's actions, Mr. Cobb was and continues to be damaged.

54.     Mr. Cobb seeks compensatory, equitable, and punitive relief against NHIC in an amount to be determined by a jury at trial to include costs, interest, attorneys' fees, and all other available relief.

### Prayer for Relief

55.     Mr. Cobb requests the Court enter judgement against NHIC and in his favor as to each claim asserted herein, including awarding all available relief.

56.     Mr. Cobb requests the Court award reasonable fees and costs incurred in this litigation, including expert witness expenses.

57.     Mr. Cobb requests the Court award pre- and post-judgment interest.

58.     Mr. Cobb requests a jury for all issues which may so be tried

* * * * * * * *

Dated:  September 25, 2020

Respectfully submitted,

s/ Michael D. Grabhorn
Michael D. Grabhorn
*m.grabhorn@grabhornlaw.com*
Andrew M. Grabhorn
*a.grabhorn@grabhornlaw.com*
**Grabhorn Law | Insured Rights®**
2525 Nelson Miller Parkway, Suite 107
Louisville, KY  40223
p: (502) 244-9331
f: (502) 244-9334

*Attorneys for Plaintiff William E. Cobb, Jr.*